UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

THERESA CECCOTTI,

                Plaintiff,

-against-

FABIO AMENDOLA, individually,
RICHARD J. IUELE, individually,
and the NEW YORK STATE
THRUWAY AUTHORITY,
                Defendants.

------------------------------------------------------x

08 Civ. ( )

**COMPLAINT**

**Jury Trial Demanded**



Plaintiff THERESA CECCOTTI, by her attorneys Lovett & Gould, LLP, for her complaint respectfully alleges:

### NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from the conduct of Defendants while acting in concert under color of New York State law, for violations of Plaintiff's rights as guaranteed by 42 U.S.C. §1983 and 42 U.S.C. §2000e *et. seq.*

### JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. Plaintiff's state law claim is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367. On May 22, 2006, Plaintiff duly filed with the United States EEOC a Charge of Discrimination against her employer, the New York State

1

Thruway Authority, for violations of Title VII (race, color, gender), 42 U.S.C. §2000e *et. seq*. On August 31, 2006, the EEOC duly issued to Plaintiff a Notice of Right to Sue.

## THE PARTIES

3. Plaintiff THERESA CECCOTTI is a female Caucasian citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. At all times relevant to this complaint and for the past approximately seventeen years, she has been employed as a "Bridge Repair Mechanic" (hereinafter "BRM") by the New York State Thruway Authority (hereinafter alternatively "NYSTA"). As such she is one of the two females NYSTA employees assigned to work from time to time on or about the Tappan Zee Bridge. For the past several years she has volunteered to work on the so-called seasonal "night crew", which functions during the months of April through November in order to: i) benefit from a pay differential in her capacity as a BRM; ii) serve as the Supervisor on the night crew in order to receive a substantial increase in her annual salary; and iii) be available during the daytime over the summer months to supervise her children while they were not in school.

4. Defendant FABIO AMENDOLA (hereinafter "Amendola"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the NYSTA as a "Bridge Maintenance Supervisor, II" assigned to the Tappan Zee Bridge. As such he had direct supervisory authority over Plaintiff. The retaliatory and gender discriminatory conduct he engaged in, as set forth *infra*, was taken in furtherance of and in accordance with established NYSTA policy, practice and custom.

5. Defendant RICHARD J. IUELE (hereinafter "Iuele"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed by the NYSTA as a "Bridge Maintenance Engineer", assigned to the Tappan Zee Bridge. As such he had direct supervisory authority over Amendola. The retaliatory and gender discriminatory conduct he engaged in, as set forth *infra*, was taken in furtherance of and in accordance with established NYSTA policy, practice and custom.

6. Defendant NEW YORK STATE THRUWAY AUTHORITY (hereinafter "Authority") is a public authority duly created by, and existing pursuant to, the laws of the State of New York.

### THE FACTS

7. In or about the Spring of 2005, Amendola and Iuele appointed a male (Michael King) to serve as "Supervisor" for the so-called "night crew" of which Plaintiff was then a member. King, although technically qualified to perform that job, was in fact incapable of doing so and resigned effective June 29, 2005.

7. As a result, Amendola and Iuele temporarily appointed Plaintiff to serve as the Supervisor in charge of the night crew in order to give themselves time to identify a male willing to accept that assignment in Plaintiff's stead. Unlike King, Plaintiff competently and consistently performed all of the duties of the Supervisor position.

8. Despite the quality of Plaintiff's job performance and because of her gender, effective July 11, 2005, Amendola and Iuele removed Plaintiff from the night crew Supervisor position and replaced her with a morbidly obese African-American male (hereinafter referred to as "TH") who:

3

      a. Was not competent to serve in that supervisory position for lack of qualifications, experience, seniority, and training,

      b. By reason of his size (then five hundred fifteen pounds), could not fit on top of bridge pier caps, could not fit between steel support beams on the bridges, could not perform work on ladder, could not perform work on scaffolding, could not fit in and/or work out of any bucket-type equipment, and,

      c. Was less qualified, had substantially less seniority, and was less experienced than Plaintiff.

9. On or about April 12, 2006, Plaintiff again volunteered to work on the night crew and applied for the Supervisor position - - with respect to which she was the most experienced and competent candidate.

10. By reason of Plaintiff's gender, and despite her qualifications and demonstrated competency, Iuele and Amendola on or about April 17, 2006, again appointed TH as the night crew Supervisor because of his gender and despite his continued:

      a. Lack of training,

      b. Incompetence to perform the duties of that assignment, and,

      c. Lack of seniority and experience.

In that connection Iuele and Amendola not only denied Plaintiff the night Supervisor position on the night crew but also, based upon a calculatedly false "skip memo", punitively barred her by reason of her gender from working on the night crew as a BRM.

17. Under the premises Defendants' conduct violated Plaintiff's rights as guaranteed her by reason of the New York State Executive Law, Section 296 *et. seq*.

### AS AND FOR A THIRD CLAIM
### AGAINST THE AUTHORITY

18. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "13", inclusive.

19. Under the premises Defendant's retaliatory conduct violated Plaintiff's right to be free from retaliation for having opposed unlawful discrimination on the basis of race, color and gender in the workplace which right is guaranteed her by reason of Title VII, 42 U.S.C. §2000e *et. seq*.

WHEREFORE a judgment is respectfully demanded:

a. Awarding on the First Claim against Iuele and Amendola such compensatory and punitive damages as the jury may determine,

b. Awarding on the Third Claim such compensatory damages as the jury may determine,

c. Granting costs and reasonable attorney's fees with respect to the First, and Third Claims, and,

    d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
       February 9, 2008

                                            LOVETT & GOULD, LLP
                                            Attorneys for Plaintiff
                                            By:_____
                                            Jonathan Lovett (4854)
                                            222 Bloomingdale Road
                                            White Plains, N.Y. 10605
                                            914-428-8401